## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SALIM SAID, et al**., | ) | |
| | ) | |
| *Petitioners***,** | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 05-CV-2384 (RWR) |
| | ) | |
| **GEORGE W. BUSH, et al.,** | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |
| **ZIYAD BIN SALIH BIN MUHAMMAD AL BAHOOTH,** | ) ) | |
| | ) | |
| *Petitioner***,** | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 05-CV-1666 (ESH) |
| | ) | |
| **GEORGE W. BUSH, et al.,** | ) | |
| | ) | |
| *Respondents.* | ) | |

### PETITIONERS' OPPOSITION TO MOTION TO DISMISS

Patricia A. Bronte
Maya D. Nath
Elton Y. Wong
JENNER & BLOCK LLP
330 North Wabash Ave.
Chicago, IL  60611
Tel: (312) 222-9350
Fax: (312) 527-0484

Dated: May 3, 2007

David W. DeBruin (DDC Bar No. 337626)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W., Suite 1200
Washington, D.C.  20005-3823
Tel: (202) 639-6000
Fax: (202) 639-6066

*Of Counsel*
Gitanjali S. Gutierrez (GG1234)
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

*Counsel for Petitioners Saad Al Qahtaani, Mohammed Zahrani, and Ziyad Al Bahooth*

2

# TABLE OF CONTENTS

A.   THIS COURT RETAINS SUBJECT-MATTER JURISDICTION OVER THE
     HABEAS CORPUS PETITIONS AS LONG AS THE PETITIONERS' CLAIMS
     ARE NOT FRIVOLOUS AND HAVE NOT BEEN DECIDED ON THE
     MERITS BY THE SUPREME COURT.............................................................................. 3

B.   THE *BOUMEDIENE* CASE ESTABLISHES THAT THE PRESENT CASE
     INVOLVES SUBSTANTIAL ISSUES THAT HAVE NOT BEEN DECIDED
     BY THE SUPREME COURT AND THAT THE EXHAUSTION OF
     AVAILABLE REMEDIES SHOULD PRECEDE A DECISION ON THE
     MERITS. ........................................................................................................................... 6

     1.   Justices Stevens and Kennedy Explicitly and The Circuit Court Implicitly
          Adopted The Exhaustion Of Remedies Model For Habeas Relief. ...................... 7

     2.   The Supreme Court Has Not Decided Any Questions Regarding The
          Jurisdiction Of This Court Or The Rights That Can Be Enforced Through
          Habeas Corpus Proceedings. ................................................................................. 8

     3.   The Jurisdictional Questions Regarding Habeas Corpus Cannot Be
          Resolved Until The Adequacy Of The DTA Remedy Is Decided. ......................... 9

     4.   The District Court Not Only Has Discretion To Enter A Stay-And-Abey
          Order, But Such An Order Is Mandatory Under *Rhines*. ...................................... 9

C.   UNDER *UNITED MINE WORKERS*, THE COURT HAS AUTHORITY TO
     PRESERVE THE STATUS QUO WHILE JURISDICTIONAL QUESTIONS
     ARE LITIGATED. ........................................................................................................... 12

D.   THE PROTECTIVE AND OTHER PROCEDURAL ORDERS ARE
     NECESSARY TO ASSURE THAT "THE OFFICE AND PURPOSES OF THE
     WRIT OF HABEAS CORPUS" ARE NOT COMPROMISED. ..................................... 13

E.   *BOUMEDIENE* DOES NOT ESTABLISH THE RECORD TO WHICH
     PETITIONERS SHOULD BE BOUND BECAUSE OTHER LEGAL THEORIES
     MAY APPLY TO THE PARTICULAR FACTS OF THEIR CASES. ............................. 14

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

*Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990) .................................................................5

*Bell v. Hood*, 327 U.S. 678 (1946) ...........................................................................................3

*Boumediene v. Bush*, 127 S. Ct. 1478 (2007) ........................1, 3, 4, 6, 7, 8, 9, 10, 12, 13, 14, 15

*Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) ................................1, 2, 3, 4, 5, 6, 7, 8, 15

*Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006) .......................................................................1, 10

*Ex parte Hawk*, 321 U.S. 114 (1944).......................................................................................7, 8

*Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145 .....................................................................5

*Marino v. Ragen*, 332 U.S. 561 (1947).....................................................................................9

*Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) .........................................................................11

*Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661 (1974) ...................................3

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) .........................................................................10, 11

*Padilla v. Hanft*, 547 U.S. 1062 (2006) ...................................................................................6

*In re President and Directors of Georgetown College*, 331 F.2d 1000 (D.C. Cir. 1964) .......2, 12

*Rasul v. Bush*, 542 U.S. 466 (2004).................................................................1, 2, 6, 7, 15

*Rhines v. Weber*, 544 U.S. 269 (2005)........................................................2, 5, 9, 10, 11, 12, 16

*Rose v. Lundy*, 455 U.S. 509 (1982) .................................................................................10, 11

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)...............................2, 3, 5, 16

*Swain v. Pressley*, 430 U.S. 372 (1977)......................................................................................9

*Texas v. Cobb*, 532 U.S. 162 (2001) .........................................................................................14

*United States v. Booker*, 543 U.S. 220 (2005) .........................................................................14

*United States v. Ruiz*, 536 U.S. 622 (2002) ...............................................................................5

*United States v. Shipp*, 203 U.S. 563 (1906) ...........................................................................12

*United States v. United Mine Workers of America*, 330 U.S. 258 (1947) ....................2, 4, 12, 16

*United States v. Vanness*, 85 F.3d 661 (D.C. Cir. 1996) .............................................................5

PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

Petitioners Saad Al Qahtaani, Mohammed Zahrani, and Ziyad Al Bahooth oppose the government's Motion to Dismiss because controlling Supreme Court and Circuit Court authority require this Court to stay the District Court proceedings, holding them in abeyance pending exhaustion of remedies under the Detainee Treatment Act of 2005 ("DTA").

For more than four and one-half years, the U.S. government has held Petitioners without charge and virtually incommunicado at the United States Naval Base at Guantánamo Bay ("Guantánamo").  Prior to the DTA's enactment, Petitioners filed habeas petitions under the authority of *Rasul v. Bush*, 542 U.S. 466 (2004).  As the Supreme Court held in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), therefore, Petitioners were entitled to pursue habeas relief and not just the limited review permitted under the DTA.  In February 2007, however, the Circuit Court held that the Military Commissions Act of 2006 effectively relegated Petitioners to DTA review as a substitute for the habeas review confirmed in *Rasul*.  *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007).  The Supreme Court denied certiorari "at this time," with three Justices dissenting and two Justices issuing a statement "respecting the denial of certiorari."  127 S. Ct. 1478 (2007).  The statement indicated that the *Boumediene* petitioners should exhaust their remedies under the DTA, and cautioned against any prejudice to the petitioners' rights and any compromise to "the office and purposes of the writ of habeas corpus."  *Id.*

The government now seeks to dismiss Petitioners' habeas proceedings, contending that the Court lacks jurisdiction to take any other action in these cases.  Granting the government's motion, however, would accomplish the very prejudice that Justices Kennedy and Stevens sought to prevent.

Moreover, this Court has subject-matter jurisdiction over Petitioners' habeas corpus petitions under the Supreme Court case upon which the government's Motion is primarily based,

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).  Under *Steel Co.*, dismissal for lack of subject-matter jurisdiction is proper only where the federal claim is frivolous or foreclosed by prior decisions of the Supreme Court.  *Id*. at 89.  The Circuit Court's split decision in *Boumediene v. Bush*, and the split commentary from Supreme Court Justices on the denial of certiorari in that case, establish that the issues involved in this case are substantial and that the Supreme Court has not answered the jurisdictional questions that have been deferred pending exhaustion of available remedies.  476 F.3d 981 (D.C. Cir. 2007), *cert. denied*, 127 S. Ct. 1478 (2007).

The Supreme Court has provided a clear road map for the litigation involving Guantánamo prisoners who filed habeas corpus petitions at a time when this Court had jurisdiction under *Rasul*.  The District Court has authority to enter a stay-and-abey order to safeguard habeas rights while available remedies are exhausted.  In fact, such an order is mandatory in the absence of frivolous claims or intentional delay.  *Rhines v. Weber*, 544 U.S. 269, 274 (2005).  While the merits are stayed pending exhaustion and during post-exhaustion litigation, this Court has the authority to maintain the supervisory orders this Court has entered regarding access to counsel, use of the filter team, preservation of evidence, and advance notice of transfer to other countries.  *United States v. United Mine Workers of America*, 330 U.S. 258, 290-91 (1947); *In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964).

Permitting Petitioners to present their post-exhaustion facts and claims to this Court is logical, fair, and compelled by governing Supreme Court authority.  Petitioners have made viable and substantial claims and should be given the opportunity to establish a record for appellate and Supreme Court review.  The motion to dismiss should therefore be denied.

**A.    THIS COURT RETAINS SUBJECT-MATTER JURISDICTION OVER THE HABEAS CORPUS PETITIONS AS LONG AS THE PETITIONERS' CLAIMS ARE NOT FRIVOLOUS AND HAVE NOT BEEN DECIDED ON THE MERITS BY THE SUPREME COURT**.

The government places primary reliance on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question (Motion at 4).  The government, however, ignores the language in *Steel Co.* that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists and that controversy has not been resolved on the merits by the Supreme Court.  *Steel Co.*, 523 U.S. at 89.

The basis of *Steel Co.* is that the District Court has subject matter jurisdiction where there is a non-frivolous argument that is supported by the laws and Constitution:

> [T]he district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another"  . . . unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

*Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).  As demonstrated by the dissenting opinions at both the Circuit Court level and on the denial of certiorari by the Supreme Court in *Boumediene*, there is a reading of the Constitution and laws of the United States that would sustain Petitioners' habeas corpus petitions.  476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S. Ct. at 1479-81 (Breyer, Souter, & Ginsburg, JJ., dissenting from denial of certiorari).

*Steel Co.* also stands for the principle that a Circuit Court opinion, such as *Boumediene*, does not deprive this Court of subject-matter jurisdiction.  In *Steel Co.*, the Supreme Court stated that "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy.'"  523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414

U.S. 661, 666 (1974) (emphasis added)).  Dismissal for want of subject mater jurisdiction is therefore appropriate only when the Supreme Court has ruled adversely on the merits.  The *Boumediene* denial of certiorari was not a ruling on the merits.

In this case, the jurisdictional issues are obviously not frivolous because U.S. courts have been split on the constitutional issues at each level of the litigation:  the District Courts' split, a two-to-one *Boumediene* opinion at the Circuit level, and a three-way fracture in the Supreme Court's denial of certiorari.  Seldom has this country faced weightier issues about the meaning of our Constitution.  Therefore, rather than providing support for dismissal, the government's primary authority establishes that the motion to dismiss should be denied while these issues are resolved.

Ironically, the government's own Motion recognizes this Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed.  In footnote 15, the government points out that certain portions of the Protective Order should survive dismissal, citing to a case upon which Petitioners rely – *United Mine Workers* (Motion at 8-9).  *United Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and, as Justices Stevens and Kennedy explained in *Boumediene*, ensuring that "the office and purposes of the writ of habeas corpus are not compromised."  127 S. Ct. at 1478.  The government's desire to terminate selected provisions of the protective order, such as those permitting Petitioners access to their counsel, while preserving other provisions the government favors, is untenable.  If this Court were to dismiss the actions, the protective order would continue in full effect until the protective order itself, or individual provisions thereof, were modified or dissolved by order of this Court.

This Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155 (2005); *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies is being determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*. If the case is not mooted by the DTA proceedings, this Court should provide Petitioners the opportunity to make their record, present their claims, and obtain a decision based on the facts and law of their individual cases.

The government's position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)). Although the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair this Court's ability to preserves the status quo.[1] If necessary, this Court, the Circuit Court, and the Supreme Court have jurisdiction to determine the substantial issues raised by Petitioners without prejudgment based on a Circuit Court ruling that does not address Petitioners' specific factual and legal claims.

---

[1] The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The government cited the concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority decision upholding the court's power to enter a stay. *Id.* The other concurring and dissenting opinion correctly articulated the applicable law: until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction, including "minimally, the power to maintain the status quo." *Id.* at 155-56 (Wald, C.J., concurring and dissenting).

**B.    THE *BOUMEDIENE* CASE ESTABLISHES THAT THE PRESENT CASE INVOLVES SUBSTANTIAL ISSUES THAT HAVE NOT BEEN DECIDED BY THE SUPREME COURT AND THAT THE EXHAUSTION OF AVAILABLE REMEDIES SHOULD PRECEDE A DECISION ON THE MERITS.**

The government attempts to stretch the Circuit Court's *Boumediene* decision far beyond its reach.  Despite the Supreme Court's finding of jurisdiction in *Rasul*, a split panel of the Circuit Court found that post-*Rasul* statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo.  *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because the petitioners in those cases had declined to seek review under the DTA, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction.  *Boumediene*, 476 F.3d at 994.  The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a two-Justice statement respecting the denial of certiorari.  *Boumediene v. Bush*, 127 S. Ct. 1478 (2007).

Justices Stevens and Kennedy pointed to "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," and agreed that denial of certiorari was appropriate "at this time."  *Id*. at 1478 (Kennedy & Stevens, JJ., respecting the denial of certiorari).  The Justices specifically expressed concern regarding maintenance of the status quo during the litigation, stating that "[w]ere the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'"  *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The government's reliance on *Boumediene* is misplaced for several reasons.  First, the Circuit Court's reference to the *Boumediene* petitioners' decision not to exhaust, coupled with

Justices Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while DTA remedies are pursued.  *Id*. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S. Ct. at 1478 (Stevens & Kennedy, JJ., respecting the denial of certiorari) (citing *Rasul*, 542 U.S. at 480-81).  Third, Justices Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of alternative remedies contemplates an underlying habeas corpus case in which Petitioners can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.  Fourth, Supreme Court authority establishes that dismissal of these proceedings would be an abuse of discretion.

### 1.    Justices Stevens and Kennedy Explicitly and The Circuit Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief.

*Boumediene* does not control in this case because Petitioners intend to file one or more petitions under the DTA.  In *Boumediene*, the Circuit Court expressly predicated its dismissal on the petitioners' failure to utilize available remedies under the DTA.  476 F.3d at 994.  On appeal of that decision, Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies.  *Boumediene*, 127 S. Ct. at 1478 (citing *Ex parte Hawk*, 321 U.S. 114 (1944)).

The citation to *Hawk* is telling.  In *Hawk*, the petitioner filed for federal habeas corpus relief under circumstances in which the effectiveness and adequacy of alternative remedies had not been established.  The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . .  But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless.  In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court.  The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

>    **2.    The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.**

The government's claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits."  127 S. Ct. at 1478.  In their dissents, three Supreme Court Justices and Circuit Judge Rogers explained that the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance.  *Boumediene*, 476 F.3d at 994-1012; 127 S. Ct. at 1479-81.  The addition of Justices Stevens and Kennedy's statement confirms that Petitioners' claims should be fully considered, after pursuit of the DTA remedy, upon the unique facts and legal arguments of each Petitioner.  The *Boumediene* case does not resolve these jurisdictional questions in Petitioners' cases, thus this Court should stay the actions while DTA remedies are being pursued.[2]

---

[2]     The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

3.      **The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Is Decided.**

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection equal to the Great Writ.  *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.").  The *Boumediene* denial of certiorari clearly states that, if the DTA remedy is found to be "inadequate," the Court is prepared to address the merits of the habeas corpus claims.  127 S. Ct. at 1478 (citing *Marino v. Ragen*, 332 U.S. 561 (1947)).  Further, the Court stated that, in the interim, the government should take no additional steps "to prejudice the position of petitioners" in seeking review.  *Id.*  By maintaining the present cases in the District Court, this Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised."  *Id.*

The exhaustion model from the *Boumediene* litigation requires that the District Court proceedings remain in place for potential post-exhaustion litigation and the government's motion to dismiss be denied.

4.      **The District Court Not Only Has Discretion To Enter A Stay-And-Abey Order, But Such An Order Is Mandatory Under *Rhines*.**

Given the need to pursue remedies under the DTA, the District Court proceedings should be stayed and held in abeyance pending completion of the Petitioners' DTA review.  In *Rhines*, the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings.  544 U.S. at 278.  In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system and unexhausted claims.  Because of the significant procedural risks of a dismissal, the Court found that District Courts had discretion to enter stay-and-abey orders in a federal

9

habeas case while the unexhausted claims were presented in state court. The federal habeas

corpus case was stayed and held in abeyance for a reasonable time while available state remedies

were exhausted.

> As the Supreme Court instructed in *Rhines*:

> [I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition [containing exhausted and unexhausted claims] if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. See *Lundy*, 455 U.S. at 522, 102 S. Ct. 1198 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief").

*Id*. at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).

The petition here easily meets all three conditions for mandatory stay-and-abey. First,

there is good cause for the failure to exhaust until now: When Petitioners' habeas corpus

petitions were filed, the Supreme Court had held that Petitioners were entitled to seek habeas

relief and the DTA remedy did not exist. In *Pace*, the Court noted that potential confusion

regarding state remedies required equitable protections. 544 U.S. at 416. In the present case,

Petitioners are Guantánamo detainees who face complexities that are far worse that mere

confusion of remedies. Petitioners did not have the alternative DTA remedy prior to October

2006 because, as the Supreme Court held, the DTA did not apply retroactively to habeas corpus

petitions like these, filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.

Ct. 2749, 2762-69 (2006).

Second, the claims raised by Petitioners are substantial and meritorious. *See*

*Boumediene*, 127 S. Ct. at 1479 (Breyer, Souter, & Ginsburg, JJ., dissenting) ("[P]etitioners

plausibly argue that the lower court's reasoning is contrary to this Court's precedent. This Court

previously held that federal jurisdiction lay to consider petitioners' habeas claims."). Petitioners

assert a number of bases for granting relief on the merits, including claims under the laws and

Constitution of the U.S. and international law.  In the event the case is remanded, or if the DTA

procedures prove an inadequate substitute for constitutionally required habeas corpus

procedures, this Court should be in a position to proceed immediately on the habeas petitions.

Finally, Petitioners have not engaged in intentionally dilatory tactics.  On the contrary,

Petitioners have been diligent in presenting their claims and attempting to obtain relief.

Petitioners have been confined at Guantánamo for over four years[3] in virtual isolation, cut off

from their families, and subjected to harsh treatment and conditions.  Petitioners have been

attempting to move forward since their habeas petitions were filed in the District Court, while the

government has resisted any attempt to reach the merits of the petitions since the moment they

were filed.

The government's attempt to distinguish *Rhines* from the case at bar is untenable.  The

government contends that the power of the district court to stay-and-abey under *Rhines* is limited

to habeas cases that would become time-barred if dismissed while state court remedies were

being exhausted (Motion at 6-7).  Although the petitioner in *Rhines* faced a statute of limitations,

the Court's holding applies to any habeas case in which dismissal for failure to exhaust would

"unreasonably impair the prisoner's right to relief." *Rhines*, 544 U.S. at 278 (quoting *Rose v.

Lundy*, 455 U.S. 509, 522 (1982)).  *Rhines* held that the District Court's equitable powers before

enactment of the statute of limitations continued to exist after the passage of the statute.  *Rhines*,

544 U.S. at 276.  As in *Pace*, the concern warranting stay-and-abey was to protect the petitioner

from an impairment of future exercise of habeas corpus rights. *See Omar v. Harvey*, 479 F.3d 1

(D.C. Cir. 2007) (affirming the District Court's preliminary injunction barring transfer of a

---

[3] Petitioner Al Qahtani has been held at Guantánamo for more than five years.

prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of a U.S. citizen detained in a military facility in Iraq).

Depriving Petitioners of the protections of this Court's procedural orders would unquestionably impair Petitioners' ability to pursue their DTA and habeas rights. Under *Rhines*, this Court should deny the government's motion to dismiss and stay Petitioners' habeas claims.

**C.    UNDER *UNITED MINE WORKERS*, THE COURT HAS AUTHORITY TO PRESERVE THE STATUS QUO WHILE JURISDICTIONAL QUESTIONS ARE LITIGATED.**

In the statement accompanying the *Boumediene* order, two Justices stated:

> Were the government to take additional steps to prejudice the position of Petitioners in seeking review in this Court, "courts of competent jurisdiction," including this Court, "should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised."

127 S. Ct. at 1478. The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and while the matter is under consideration, federal courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The Circuit Court of the District of Columbia has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d at 1005 (internal citations omitted) (quoting *Shipp* and *United Mine Workers*). This Court should carefully protect the

status quo by maintaining the orders entered to date to assure the Petitioners are not prejudiced in their ability to preserve potential remedies in this Court and on appeal.[4]

The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding issues in Petitioners' cases, including:  Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus?  If not, has the writ been unconstitutionally suspended or eliminated?  Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised"?

The Respondent's motion to dismiss should be denied because this Court has insufficient information to answer a number of questions further proceedings will answer.  Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the Petitioners, there must be an adequate record for the Circuit Court's appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petitions in this Court remain in place.  The government should not be allowed to prejudice Petitioners' ability to litigate these issues – at both the District Court and Circuit Court levels.

**D.     THE PROTECTIVE AND OTHER PROCEDURAL ORDERS ARE NECESSARY TO ASSURE THAT "THE OFFICE AND PURPOSES OF THE WRIT OF HABEAS CORPUS" ARE NOT COMPROMISED.**

The dismissal of the District Court proceedings would constitute exactly the type of prejudice to the Petitioners' ability to litigate that Justices Kennedy and Stevens instructed the

---

[4]     The supervisory orders this Court entered include not only the protective order but also the order granting the government's filter team motion and the orders requiring the government to preserve relevant evidence and to provide advance notice of any intent to transfer petitioners to another country.  The notice orders regarding Petitioners Al Qahtani and Al Bahooth are presently on interlocutory appeal before the Circuit Court.

courts to guard against. *Boumediene*, 127 S. Ct. at 1478. This Court properly addressed issues preliminary to ultimate disposition throughout this litigation. This Court's orders on access to counsel, the filter team, preservation of evidence, and advance notice of transfer should remain intact pending exhaustion of DTA remedies.

The government suggests that the protective order they agreed to should be renegotiated and replaced in the Circuit Court (Motion at 9-11). This Court has been supervising the protective order for almost two years. If difficulties arose beyond the ability of the parties to resolve, the protective order included powerful mechanisms for the government to exhaust, up to and including contempt and criminal prosecution. The government's failure to exhaust their available remedies should foreclose action based on the government's complaints. The government's desire to substitute more restrictive protective orders is no reason to dismiss these actions instead of following the Supreme Court-approved stay-and-abey procedure.

Access between Petitioners and counsel is critical in this case. The complexities of the litigation need to be explained to persons who have been held virtually incommunicado for years. The protective order should remain intact, especially given that the Court of Appeals should have the option of continuing to administer the DTA litigation under the auspices of this Court's orders.

**E.    *BOUMEDIENE* DOES NOT ESTABLISH THE RECORD TO WHICH PETITIONERS SHOULD BE BOUND BECAUSE OTHER LEGAL THEORIES MAY APPLY TO THE PARTICULAR FACTS OF THEIR CASES.**

The government's request for dismissal fails to recognize Petitioners' unique arguments, underlying facts, and resulting legal issues. The *Boumediene* cases involve specific allegations and legal theories; those cases do not control all the potential issues to be raised by Petitioners. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*,

543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most basic distinction between these cases and *Boumediene* is that the scope and efficacy of the DTA remedy will be tested and will provide this Court with necessary information that will only be known once the remedies are exhausted. Until then, the factual predicate for evaluating the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens.

In addition to providing insight into the (in)adequacy of DTA review as an alternative to habeas corpus, further litigation will also provide the opportunity to determine this Court's role in the DTA exhaustion process. Besides providing the procedural context for the litigation, Petitioners' future DTA petitions may include alternative requests for remand to this Court to resolve controverted facts, remand to this Court to address initial jurisdictional questions in the first instance, and remand to this Court based on the inadequacy of the DTA procedure for factual development and equitable relief commensurate with habeas corpus. For the Circuit Court to exercise these options, the present habeas cases must be stayed and held in abeyance.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory removal of the jurisdiction that existed at the filing of the habeas petitions under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, will involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation or further exhaustion of remedies, and address Petitioners' unique claims.

## CONCLUSION

The Petitioners' habeas corpus rights are far from finally decided. The Supreme Court has yet to speak on the merits, and the Petitioners have not had their individual facts and legal arguments heard. The government's motion prejudges the Petitioners' cases and, in effect,

would destroy the carefully crafted measures in the protective order that balance competing interests without prejudicing Petitioners' ability to communicate with counsel, which is especially important given their psychological distress and fact-intensive habeas presentation. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated. Under *Steel Co.* and *Rhines*, the proper mechanism for permitting exhaustion of alternative remedies without prejudice to habeas corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time while the DTA actions are litigated. Under *United Mine Workers*, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." 330 U.S. at 291.

For the foregoing reasons, the Petitioners respectfully request that the Court deny the government's motion to dismiss. In the event the Court grants the motion, the Petitioners request that the Court stay the effect of the dismissal for an adequate time to permit appellate review.

Respectfully submitted,


/s/ David W. DeBruin_____
One of the Attorneys for the Petitioners          Dated: May 3, 2007


Patricia A. Bronte                         David W. DeBruin (DDC Bar No. 337626)
Maya D. Nath                               JENNER & BLOCK LLP
Elton Y. Wong                              601 Thirteenth Street, N.W., Suite 1200
JENNER & BLOCK LLP                         Washington, D.C.  20005-3823
330 North Wabash Ave.                      Tel: (202) 639-6000
Chicago, IL  60611                         Fax: (202) 639-6066
Tel: (312) 222-9350
Fax: (312) 527-0484

*Of Counsel*
Gitanjali S. Gutierrez (GG1234)
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

**PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SALIM SAID, et al**., | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | |
| *v*. | ) | Civil Action No. 05-CV-2384 (RWR) |
| | ) | |
| **GEORGE W. BUSH, et al.,** | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |
| **ZIYAD BIN SALIH BIN MUHAMMAD AL BAHOOTH** | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| *v*. | ) | Civil Action No. 05-CV-1666 (ESH) |
| | ) | |
| **GEORGE W. BUSH, et al.,** | ) | |
| | ) | |
| *Respondents.* | ) | |

## [PROPOSED] ORDER

The Court having considered Petitioners' Opposition to Motion to Dismiss,

IT IS HEREBY ORDERED that the Motion is granted; it is further

ORDERED that these actions shall be stayed and held in abeyance pending exhaustion of

remedies under the Detainee Treatment Act of 2005, and the resolution in the Supreme Court of

the jurisdictional issue addressed in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) or the

Supreme Court's resolution on the merits of the same jurisdictional issue as presented in a

pending original habeas petition in *In re Ali*, No. 06-1194.


Dated: _____        _____

                                                            United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2007, I filed and served the foregoing Opposition to

Motion to Dismiss, together with the Proposed Order, by causing the original and two copies to

be delivered to the Court Security Officer, with the original to be forwarded to the Court and one

copy to be forwarded to the following counsel of record via U.S. Mail:

> Peter D. Keisler, Assistant Attorney General
> Douglas N. Letter, Terrorism Litigation Counsel
> Civil Division, Room 7268
> U.S. Department of Justice
> 950 Pennsylvania Ave., N.W.
> Washington, DC 20530-0001


> /s/ David W. DeBruin
> David W. DeBruin